**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**ANGELA A. BOWERS,**

      **Plaintiff,**

                                    **Civil Action 2:20-cv-6024**
  **v.**                                  **Judge Sarah D. Morrison**
                                    **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Angela A. Bowers, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 15), the Commissioner's Memorandum in Opposition (ECF No. 19), Plaintiff's Reply (ECF No. 26), and the administrative record (ECF No. 12). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision

### I.    BACKGROUND

Plaintiff filed her applications for disability insurance benefits and for supplemental security income in March 2018, alleging that she has been disabled since April 1, 2012, due to a right shoulder injury, high blood pressure, stage two kidney disease, depression, anxiety, and

1

migraines.  (R. at 236-43, 264.)  Plaintiff's applications were denied initially in August 2018 and

upon reconsideration in October 2018.  (R. at 70-144.)  Plaintiff sought a *de novo* hearing before

an administrative law judge.  (R. at 162-63.)  Administrative Law Judge Karen Sayon ("ALJ")

held a video hearing on October 22, 2019, at which Plaintiff, who was represented by counsel,

appeared and testified.  (R. at 38-69.)  A Vocational Expert ("VE") also appeared and testified.

(*Id.*)  On November 26, 2019, the ALJ issued a decision finding that Plaintiff was not disabled

within the meaning of the Social Security Act.  (R. at 13-37.)    The Appeals Council denied

Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final

decision.  (R. at 2-7.)

## II.    HEARING TESTIMONY

The ALJ summarized Plaintiff's statements to the agency and her relevant hearing

testimony as follows:

> At the hearing, [Plaintiff] testified that she is impaired due to her right shoulder
> injury. She stated that she has had many surgeries performed by Dr. Doolittle. She
> testified that she is not able to lift her arm and put it behind her. Her last surgery
> was Sept 18, 2019. She went to physical therapy. She can do things at countertop
> and if she does not have to lift. She can write two to three sentences. She has to do
> everything with her left hand, which is a struggle since she is right handed. She is
> on medications for her mental health issues. She thinks she is on Zoloft; she takes
> it once a day and takes it in the morning. She has been on it eight to nine years. She
> also takes Wellbutrin. She has been on it a year to two years. She also takes
> Clonazepam, which she can take three times a day, but she gets dizzy so she does
> not take it. She stated in a typical day, she picks her son up from school, stays home.
> She stated that her mom goes to the grocery store for her. She stated that she may
> do laundry, cleaning and cooking. She can do laundry and dishes with her left hand.
> Her son helps vacuum and mop; she can cook. She stated that she was currently
> taking Tramadol for her shoulder, which makes her tired, and dizzy which is
> another reason she stays home. She stated she could lift a gallon of milk; she cannot
> lift anything heavy as it pulls on her right shoulder. She stated that she gets
> numbness and tingling in her right hand and is not able to button or zip, or use a

knife. [Plaintiff] testified that she does not sleep well, is not able to focus, and she is not angry but irritable. She stated she has crying spells with no motivation or energy. In her Function Report, she noted that her impairments affect her ability to lift, reach, sit, complete tasks, concentrate, use her hands and get along with others (Ex. 3E).

(R. at 24-25.)

## III. RELEVANT MEDICAL RECORDS

The ALJ summarized the relevant medical records concerning Plaintiff's right shoulder

problems[1] in this way:

She treated with Kenneth Doolittle, M.D. She had surgery in January of 2009 (12F/3) and then apparently went back to work, but complained of pain again in 2012. She alleges disability in the case before me as of April 1, 2012. She had another surgery in October of 2012 (12F/5), as well as February of 2016 (20F/51) and May of 2018 (22F/75), and again in September of 2019 (23F/1), the month before the hearing. The first three surgeries were all right shoulder arthroscopic debridement and acromioplasty, with post-operative diagnoses of shoulder strain and tendinitis. The May 2018 surgery was for right shoulder rotator cuff repair, cuff avulsion, right shoulder biceps [] tenodesis, debridement, and arthroscopic acromioplasty with subacromial decompression.

This is a worker's compensation claim, but the file before me does not contain any independent medical evaluations or functional capacity evaluations. [Plaintiff] had physical therapy several times, with many cancellations and poor effort, as well as questionable compliance with home exercise program (e.g., 11F). Pursuant to Dr. Doolittle's notes, she was doing better in mid to late 2018 and early 2019 (18F), but a magnetic resonance image (MRI) study in August of 2019 (22F/1) showed rotator cuff tendinosis with focal full-thickness tear of the supraspinatus tendon close to the critical zone. There was intermediate to high grade partial tearing of the anterior fibers of the supraspinatus; mild glenohumeral osteoarthritis; post-operative changes, and so she had another surgery the next month, which was an arthroscopic debridement and rotator cuff repair (23F/1).

---

[1] Because Plaintiff's statement of error pertains only to her right shoulder impairment, the Undersigned's discussion is limited to the same.

3

Further discussing the medical records, [Plaintiff] has a history of a right shoulder work injury in June of 2008 (Ex. 10F/5). [Plaintiff] treated with orthopedic surgeon Kenneth Doolittle, M.D. Dr. Doolittle performed right shoulder arthroscopic acromioplasty and debridement on January 29, 2009 (Ex. 12F/3). He diagnosed [Plaintiff] with right shoulder sprain and right shoulder supraspinatus tendinitis (Ex. 12F/3). September 17, 2012 treatment records reflect that [Plaintiff] reported her prior surgery helped but her problems have recurred and her shoulder was still painful (Ex. 11F/612).

Dr. Doolittle performed right shoulder arthroscopic acromioplasty and debridement on October 18, 2012 (Ex. 12F/5). At her follow up appointment on October 2, 2012 [Plaintiff]'s pain was mild (Ex. 12F/10). She was noted to have right extremity swelling, with minimal pain, decreased range of motion and able to actively move and raise up (Ex. 12F/11-12). Dr. Doolittle noted that [Plaintiff] declined physical therapy treatment stating that she was engaging in home exercises (Ex. 12F/12).

[Plaintiff] had right shoulder arthroscopic debridement and acromioplasty on February 25, 2016 (Ex. 12F/7; 20F/51). Her postoperative diagnosis was right shoulder strain and tendinitis (Ex. 20F/51). On October 5, 2016, Dr. Doolittle's associate Katherine Burnside L.P.N. noted that [Plaintiff] was denied vocational rehabilitation as she has completed it and [Plaintiff] declined employment (Ex. 11F/95). [Plaintiff] had work restrictions of no overhead reach or lift (id.). On December 18, 2017, [Plaintiff] was noted to doing vocational rehabilitation (Ex. 11F/29). On exam, she was in no acute distress with normal findings except her right shoulder (Ex. 11F/32). In May 23, 2018, [Plaintiff] saw Dr. Doolittle's L.P.N. and under examination she was alert, in no acute distress, oriented times three, she had normal gait and station (Ex. 12F/15). [Plaintiff] had right should arthroscopic debridement and acromioplasty on May 29, 2018 (Ex. 22F/75). [Plaintiff] had follow up visits June 4, 2018, June 27, 2018 and August 1, 2018 (Ex. 18F/27, 33, 39). On exam, [Plaintiff] was noted to be in no acute distress with unremarkable examination with the exception of her right shoulder (Ex. 18F/20, 36, 42). At her September 20, 2018 postoperative visit, [Plaintiff] was noted to have mild pain, she

4

was taking Aleve when needed, and she demonstrated excellent range of motion with significant weakness (Ex. 18F/21). She was in no acute distress and the remainder of her examination was unremarkable with the exception of her right shoulder (Ex. 18F/24). She had decreased range of motion and was rotationally stable (Ex. 18F/24). In October 17, 2018, [Plaintiff] reported that she was getting better with more strength and movement and doing better at home with exercises (Ex. 18F/15). [Plaintiff] declined formal physical therapy stating she was doing better on her own at home (Ex. 18F/15). Dr. Doolittle noted that [Plaintiff] had not reached maximum medical improvement and she would continue rehabilitation program (id.). She was taking Aleve and Ibuprofen for pain (id.). Under exam, she was in no acute distress with an unremarkable examination, with the exception of her right shoulder with abnormal range of motion with normal rotational stability with the ability to actively raise up (Ex. 18F/18). On January 14, 2019, the notes reflect that [Plaintiff] had improvement with physical therapy in the past and wanted to participate in physical therapy for reconditioning including range of motion and strengthening of the right shoulder for maintenance therapy (Ex. 18F/9). On exam, she was in no acute distress and mostly unremarkable with the exception of her right shoulder with decreased range of motion and with normal rotational stability (Ex. 18F/12). On February 13, 2019 [Plaintiff] reported that her shoulder was feeling better and requested a new TENS unit (Ex. 18F/3). On exam, she was noted to be alert, in no acute distress and oriented times three (Ex. 18F/6). Under musculoskeletal she had negative anterior and posterior drawer test on the right, her Hawkins- Kennedy impingement was positive, her labral crank test was positive and drop sign negative (id.). She had normal rotational stability (id.).

[Plaintiff] treated with her primary health care provider Simona Moore C.R.N.P. (Ex. 18F). Her examinations were mostly normal with the exception of distended abdomen (Ex. 19F/2, 3, 8, 13, 17, 18, 22, 30, 34, 39, 44, 57, 60, 69). In October of 2018, [Plaintiff] complained of bad right shoulder problems joint pain (Ex. 19F/59). Ms. Moore noted on October 30, 2018 that [Plaintiff] was in to discuss her toxicology reports and admitted that she was taking her husband's Vicodin (Ex. 9F/26). In July of 2019, [Plaintiff] was diagnosed with restless leg syndrome, abdominal distension and cough (Ex. 19F/34). In August of 2019, [Plaintiff] was noted to have decreased range of motion in the right shoulder (Ex. 19F/44). Ms. Moore referred [Plaintiff] to a rheumatologist (Ex. 19F/45).

[Plaintiff]'s physical therapy records demonstrate that she had greater ability than alleged and had issues with compliance. On August 2, 2013, [Plaintiff] arrived eight minutes late and unhooked herself the IFC E- Stim machine and left before the timer expired (Ex. 1F/527). On August 9, 2013, [Plaintiff] reported that she was compliant with home exercise and when asked which exercises she was doing she could give only one or two examples (Ex. 11F/529). [Plaintiff] cancelled

her appointment on August 13, 2013 (Ex. 11F/529). On August 15, 2013, she was noted to pick up her purse with her right upper extremity and crossed midline to place on her left shoulder (Ex. 11F/522). On August 27, 2013 she had full range of motion with positive stretching (Ex. 11F/524). [Plaintiff] was noted to cancel her appointment on February 12, 2014, February 13, 2014, February 27, 2014, February 28, 2014, February 28, 2014, March 5, 2014 and when she is at therapy, she puts little effort forth (Ex. 11F/463, 465, 468 485-486).

A peer review was conducted in March of 2014 by occupational medicine physician Scott Singer M.D. (Ex. 11F/473). It noted that there was a gap in [Plaintiff]'s treatment from March of 2010 and April 2012 (Ex. 11F/474). It noted that [Plaintiff] missed two of her three scheduled physical therapy appointments (id.). The additional physical therapy was denied noting that [Plaintiff] had undergone extensive post-operative rehabilitation following her surgery on October 18, 2012, she had a well-documented history of non-compliance with her previous physical therapy treatment regimens (Ex. 11F/474).

The objective imaging and tests do not support [Plaintiff]'s alleged limitations. An August 20, 2013 electromyography and nerve condition report was normal (Ex. 11F/525). March 9, 2016 imaging of the right shoulder showed negative examination (Ex. 20F/35). A January 2, 2018 MRI of the right shoulder noted low to intermediate grade partial-thickness articular surface tear of the mid insertional fibers, no focal muscle atrophy, no labral tear and interval distal clavicle resection (Ex.s 12F/9; 22F/85-86). June 27, 2018 imaging of [Plaintiff]'s right shoulder noted postoperative changes of the acromioclavicular joints suspected and no acute osseous pathology (Ex. 18F/1). An August 2, 2019 MRI noted study degraded by motion (Ex. 22F/1). It showed rotator cuff tendinosis with focal full-thickness tear of the supraspinatus tendon close to the critical zone (Ex. 22F/2). There is intermediate to high grade partial tearing of the anterior fibers of the supraspinatus; mild glenohumeral osteoarthritis and post-operative changes (id.).

The record reflects some inconsistencies with [Plaintiff]'s testimony and treatment in addition to compliance issues. However, taking into consideration [Plaintiff]'s allegations regarding limited use of her right arm, and limited use of her hand, her impairments would be accommodated with light work with additional limitations no climbing of ladders, ropes or scaffolds, occasional crawling, no overhead reaching with the dominant right upper extremity. [Plaintiff] should avoid even moderate exposure to hazards (unprotected heights, dangerous moving machinery). [Plaintiff] can have no lifting or carrying over ten pounds with the right upper extremity but can lift and carry twenty pounds occasionally and ten pounds frequently with the left upper extremity; frequent but not constant reaching laterally and in front with the dominant right upper extremity; and occasional pushing/pulling of hand controls with the dominant right upper extremity.

(R. at 25-28.)

## IV.    ADMINISTRATIVE DECISION

On November 26, 2019, the ALJ issued her decision.  (R. at 13-37.)  The ALJ found that

Plaintiff met the insured status requirements of the Social Security Act through March 31, 2017.

(R. at 19.)  At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff has not

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is [Plaintiff] engaged in substantial gainful activity?
2.    Does [Plaintiff] suffer from one or more severe impairments?
3.    Do [Plaintiff]'s severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering [Plaintiff]'s residual functional capacity, can [Plaintiff] perform his or her past relevant work?
5.    Considering [Plaintiff]'s age, education, past work experience, and residual functional capacity, can [Plaintiff] perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

engaged in substantially gainful activity since April 1, 2012, the alleged onset date. (*Id.*) The

ALJ found that Plaintiff had the severe impairments of right shoulder tendonitis and tear,

and depression. (*Id.*) She further found that Plaintiff did not have an impairment or combination

of impairments that met or medically equaled one of the listed impairments described in 20

C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21.)

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional

capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] finds that the [Plaintiff]
> has the residual functional capacity to perform light work as defined in 20 CFR
> 404.1567(b) and 416.967(b) except no climbing of ladders, ropes or scaffolds,
> occasional crawling, and no overhead reaching with the dominant right upper
> extremity. [Plaintiff] should avoid even moderate exposure to hazards (unprotected
> heights, dangerous moving machinery). [Plaintiff] can have no lifting or carrying
> over ten pounds with the right upper extremity but can lift and carry twenty pounds
> occasionally and ten pounds frequently with the left upper extremity. She can
> perform frequent but not constant reaching laterally and in front with the dominant
> right upper extremity. She can perform occasional pushing/pulling of hand controls
> with the dominant right upper extremity. [Plaintiff] can carry out four step tasks
> with no fast pace or strict production requirements. [Plaintiff] can adapt to
> infrequent change from a normal work routine.

(R. at 23-24.)

Plaintiff has no past relevant work. (R. at 30.) Relying on the VE's testimony, the ALJ

concluded that Plaintiff can perform other jobs that exist in significant numbers in the national

economy. (R. at 31-32.) She therefore concluded that Plaintiff was not disabled under the

Social Security Act at any time since April 1, 2012, the alleged onset date. (R. at 32.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the

8

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.    ANALYSIS

Plaintiff raises two issues in her statement of errors.  First, Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because it does not accurately reflect Plaintiff's maximum remaining ability to perform basic work activities.  (ECF No. 15 at 8-12.) Further, Plaintiff contends that, under *Seila Law LLC v. CFPB*, 591 U.S. --, 140 S.Ct. 2183 (June 20, 2020), the Social Security Administration's structure is unconstitutional as it violates the separation of powers doctrine.  (*Id.* at 13-17).  The Undersigned will consider Plaintiff's alleged errors in reverse order and, as explained below, concludes that Plaintiff's arguments are not well-taken.

### A.  Separation of Powers

Plaintiff asserts that remand is required because a statute that provided tenure protection to the former Commissioner of Social Security Andrew Saul violated the separation of powers doctrine. She contends, therefore, that the decision to deny her benefits was made by individuals who lacked a proper delegation of power to make a benefits determination. The Undersigned finds no merit to this Constitutional claim.

As a preliminary matter, Plaintiff's claim, in the manner she has raised it here, is procedurally improper.  *Butcher v. Comm'r of Soc. Sec.*, No. 2:20-cv-6081, 2021 WL 6033683, at *6 (S.D. Ohio Dec. 21, 2021); *Crawford v. Comm'r of Soc. Sec.*, No. 2:21-CV-726, 2021 WL 5917130, at *7 (S.D. Ohio Dec. 14, 2021).  This is so because Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although a complaint need not provide

10

"detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell v. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  At a minimum, a complaint must "give the defendant fair notice of what the. . . claim is and the grounds upon which it rests." *Id*. Here, the United States Supreme Court case upon which Plaintiff bases her Constitutional claim was decided on June 20, 2020. Plaintiff, however, gave no notice, let alone fair notice, of this claim in her complaint filed on November 24, 2020. (ECF No. 4.)  *Butcher,* 2021 WL 6033683, at *6 (citing *John R. v Comm'r of Soc. Sec.*, Case No. C20-6176-MLP, 2021 WL 5356719, *7 (W.D. Wash. Nov. 16, 2021) (finding that a plaintiff failed to comply with Rule 8 by failing to plead a separation of powers claim in complaint seeking judicial review of Commissioner's decision to deny benefits); *Shannon R. v. Comm'r of Soc. Sec.*, Case No. C21-5173, 2021 WL 5371394, at * 6–7 (Nov. 18, 2021) (same)).  For this reason, Plaintiff failed to comply with Rule 8.

Beyond this procedural deficiency, Plaintiff's Constitutional claim fails on a substantive basis as well.  Plaintiff, relying on *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020), contends that former-Commissioner Andrew Saul's appointment violated the principle of separation of powers because 42 U.S.C. § 902(a)(3) provides for a six-year term and makes the Commissioner removable only upon a finding of neglect of duty or malfeasance in office.  (ECF No. 15 at 14-15.)  Accordingly, Plaintiff argues that the Commissioner had no authority to carry out any functions of his office and, by extension, the ALJ had no authority to adjudicate Plaintiff's applications, necessitating a remand.  In response, the Commissioner concedes that § 902(a)(3) violates the principle of separation of powers.  (ECF No. 19 at 6 "The

parties agree that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause.") The parties' agreement on this issue, however, is not dispositive.

Plaintiff asserts that because the removal provision is unconstitutional, any delegations of power by former Commissioner Saul, including delegations of authority to ALJs or the Appeals Council who determined her benefits claims, were invalid. The Commissioner counters, however, that the ALJ who determined Plaintiff's claim on November 26, 2019, held office on that date because of a ratification of delegated authority in July 2018, by former Acting Commissioner Nancy Berryhill, not because of a delegation of authority from former Commissioner Saul.  (ECF No. 19 at 9.)  As the Commissioner correctly notes, an Acting Commissioner is not subject to § 902(a)(3)'s removal provision thereby making that provision's constitutionality, or lack thereof, irrelevant.  *Butcher*, 2021 WL 6033683, at *6  (citing *Collins v. Yellin*, 141 S.Ct. 141 S. Ct. 1761, 1781 (2021) (because the FHFA removal restrictions only applied to the Director, "any constitutional defect in the provisions restricting the removal of a confirmed Director would not have harmed [the plaintiffs], and they would not be entitled to any relief" from actions of the Acting Director who enjoyed no such removal protections); *Thomas E. v. Comm'r of Soc. Sec.*, C21-5107-BAT, 2021 WL 5415241, *5 (W.D. Wash. Nov. 19, 2021) (finding no constitutional injury where ALJ's appointment was ratified by Acting Director Berryhill who, as Acting Director, was not subject to the removal provision in § 902(a)(3)); *Alice T. v. Comm'r of Soc. Sec.*, 8:21CV14, 2021 WL 5302141, *18 (D. Neb. Nov. 15, 2021) (same); *Boger v. Kijakazi*, No. 1:20-cv-00331-KDB, 2021 WL 5023141, * 3 n.4 (W.D.N.C Oct. 28,

2021) ("Plaintiff's constitutional 'removal restriction' argument is likely not even applicable to this case because [the ALJ] was appointed by an Acting Commissioner of Social Security who could be removed from the office at the President's discretion.")).

Plaintiff's insistence that "it is uncontested" that the ALJ and the Appeals Council adjudicated her disability application pursuant to a delegation of authority from former Director Saul does not support a different result. (ECF No. 26, at 6, n.1.) Even assuming that former Director Saul appointed the ALJ and Appeals Council judges[3] who determined Plaintiff's benefits claim, remand remains unwarranted for several reasons.

First, even accepting, as the Commissioner agrees, that the removal provision in § 902(a)(3) is unconstitutional, it would not have deprived former Commissioner Saul of the ability to delegate power to others to decide Plaintiff's benefit claim because of the doctrine of severability. *Butcher,* 2021 WL 6033683, at *7. As the Supreme Court noted in *Seila Law*, "'one section of a statute may be repugnant to the Constitution without rendering the whole act void.'" 140 S.Ct. 2208 (quoting *Loeb v. Columbia Township Trustees*, 179 U.S. 472, 490 (1900)). Indeed, even in the absence of a severability clause, when "'confronting a constitutional flaw in a statute, [the Supreme Court tries] to limit the solution to the problem, severing any

---

[3]The Undersigned rejects Plaintiff's assertion in her Reply that the Commissioner waived any defense to her separation of power claim with regards to the Appeals Council by failing to address that claim in the Memorandum in Opposition. (ECF No. 26 at 10–11.) Plaintiff only cursorily mentioned the Appeals Council in her Statement of Errors (ECF No. 15 at 14), and again, failed to provide the Commissioner with fair notice of her Constitutional claim in her Complaint. (ECF No. 4.) In any event, the claim lacks merit with regard to the Appeals Council for the same reasons that the claim lacks merit with regard to the ALJ.

problematic portions while leaving the remainder intact.'" *Id*. (quoting *Free Enterprise Fund v. Public Co. Accounting Oversight Bd*., 561 U.S. 477, 508 (2010)).  For that reason, in *Seila Law*, the Supreme Court found that the unconstitutional removal provision was severable from the remainder of the CFPB's governing statutes because the CFPB was capable of functioning independently even if the unconstitutional removal provision was stricken. 140 S.Ct. at 2209–10, 2245.  The same is true here.  If the removal provision in § 902(a)(3) is stricken, the Social Security Administration would remain fully functional.  *Butcher,* 2021 WL 6033683, at *7 (citing *Alice A. v. Comm'r of Soc. Sec.*, Case No. C20-5756, 2021 WL 5514434, *6 (W.D. Wash. Nov. 24, 2021) (finding that plaintiff's separation of powers claim failed, in part, because even if § 902(a)(3) was unconstitutional it was severable from the remainder of the statutes governing the Social Security Administration); *Shaun A. v. Comm'r of Soc. Sec*., Case No. C21-5003-SKV, 2021 WL 5446878, *4 (W.D. Wash. Nov. 22, 2021) (same); *John R. v Comm'r of Soc. Sec*., 2021 WL 5356719, *8 (same)).

Additionally, even assuming the unconstitutionality of the removal provision in § 902(a)(3), that would not have automatically rendered former Commissioner Saul's appointment invalid. For this reason, it would not have automatically invalidated his actions, including delegating authority to make benefits determinations or ratifying such delegations.  *Butcher*, 2021 WL 6033683, at *7.  In *Collins v. Yellin*, 141 S.Ct. 141 S. Ct. 1761 (2021), decided after *Seila Law*, the Supreme Court considered a statute similar to § 902(a)(3) governing removal of Directors of the Federal Housing Finance Agency ("FHFA").  The *Collins* majority held that "[a]lthough the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors,

there was no constitutional defect in the statutorily prescribed method of appointment to that office.  As a result, there is no reason to regard any of the actions taken by the FHFA [ ] as void." *Id.* at 1787 (emphasis in original); *see also id.* at 1788, n.23 ("Settled precedent also confirms that the unlawfulness of [a] removal provision does not strip the Director of the power to undertake the other responsibilities of his office[.]" (citing *Seila Law*, 140 S.Ct. at 2207–2211)). Instead, to obtain reversal of an agency decision, a plaintiff must demonstrate "compensable harm" flowing from the unconstitutional removal clause.  *Collins, 141* S.Ct.. at 1788–89 (remanding for further proceedings to determine whether compensable harm to Plaintiff occurred due to the President's inability to remove a Director of the Federal Housing Finance Agency except for cause).

Here, as the Commissioner contends, Plaintiff has made no showing of compensable harm. In fact, as courts considering this precise argument have begun to conclude, it is unlikely that she could.  *See Butcher,* 2021 WL 6033683, at *8; *Crawford,* 2021 WL 5917130, at *8 (reaching identical conclusion on similar facts).  As recognized by Justice Kagan in *Collins,* the President's choice of SSA Commissioner has very little impact on the result of any particular ALJ or Appeals Council decision.  *Collins,* 141 S.Ct. at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone . . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference.").  Nor is the Court persuaded by Plaintiff's argument that harm should be presumed under the circumstances here.

15

Again, neither appointments nor actions taken by a properly appointed official are nullified by an unconstitutional removal provision. *Butcher,* 2021 WL 6033683, at *8.

For all these reasons, the Undersigned finds that Plaintiff's separation of powers claim lacks merit.[4]  Accordingly, the Undersigned does not reach the Commissioner's alternative arguments including harmless error, *de facto* officer, the rule of necessity, and other prudential considerations.

**B.  RFC**

Plaintiff also contends that the RFC is not supported by substantial evidence because the ALJ failed to consider evidence documenting her inability to engage in overhead work and her limited ability to use her right upper extremity for fine and gross motor movements.  (ECF No. 15 at 12.)  Plaintiff also argues in reply that the RFC fails to reflect that she should not engage in any "over-the-shoulder work."  (ECF No. 26 at 5.)

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [her]

---

[4]  Significantly, district courts in this Circuit, including, as noted, this one, have rejected the Constitutional claim raised by Plaintiff and consistently have concluded that the allegedly unconstitutional nature of § 902(a)(3) does not require remand.  *See Butcher,* 2021 WL 6033683; *Crawford,* 2021 WL 5917130*; Miley v. Comm'r of Soc. Sec.,* No. 1:20-CV-2550, 2021 WL 6064754 (N.D. Ohio Dec. 22, 2021); *Wybo v. Kijakazi,*, No. 20-518-HRW, 2021 WL 6052423 (E.D. Ky. Dec. 21, 2021).  Courts from other Circuits have held similarly.  *See, e.g.*, *Lisa Y. v. Comm'r of Soc. Sec.*, ___ F. Supp. 3d ___, No. C21-5207-BAT, 2021 WL 5177363, at *5 (W.D. Wash. Nov. 8, 2021); *Robinson v. Kijakazi*, No. 1:20-CV-00358-KDB, 2021 WL 4998397, at *3 (W.D.N.C. Oct. 27, 2021); *Alice T. v. Comm'r Soc. Sec.*, No. 8:21CV14, 2021 WL 5302141, at *18 (D. Neb. Nov. 15, 2021); *Standifird v. Comm'r of Soc. Sec.*, No. 20CV1630-GPC(BLM), 2021 WL 5634177, at *3 (S.D. Cal. Dec. 1, 2021).  The Undersigned agrees with the reasoning set forth in these other cases and reaches the same result.

limitations." 20 C.F.R. § 404.1545(a)(1). A claimant's RFC assessment must be based on all the relevant evidence in the case file. (*Id.*) The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)-(5); 416.913(a)(1)–(5). With regard to two of these categories— medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from the claimant's medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a).

Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. §§ 404.1520c(b)(2); 416.920c(b)(2). Although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. (*Id.*) If, however, an ALJ "find[s] that two or more medical opinions ... about the same issue are both equally well supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors. . . ." §§ 404.1520c(b)(3); 416.920c(b)(3).

Here, the ALJ addressed the medical source opinions relating to Plaintiff's right shoulder impairment as follows:

> I find the opinions rendered by the State agency's medical consultants at the initial and reconsideration levels persuasive (Ex. 1A; 2A; 5A; 6A). Both opined that the claimant would be able to work at a light exertional level with pushing and pulling of hand controls occasional on the right upper extremity, lift and carry twenty pounds occasionally and ten pounds frequently and lift carry with the right upper extremity limited to ten pounds occasionally and five pounds frequently, no climbing of ladders, ropes or scaffolds, occasional crawling, no overhead reaching with the right upper extremity, front and lateral reaching frequently but not constant with the right upper extremity and avoid even moderate exposure to hazards (no unprotected heights, and dangerous moving machinery). These opinions are persuasive, as they are supported by the objective medical evidence, and consistent with some of Dr. Doolittle's opinions.
>
> I find the opinion of Dr. Doolittle persuasive (Ex. 11F). Dr. Doolittle is the claimant's treating surgeon. He placed the claimant off work for a time in 2012 before her October 2012 surgery (Ex. 11F). However, otherwise, his notes reflect mainly no overhead reaching or lifting, with limitations of lifting of ten or twenty pounds with the right upper extremity (Ex. 11F/10, 83, 348, 363, 495, 544). While the limitations regarding the claimant being off work is reserved for the Commissioner, the remainder of the limitations are supported by Dr. Doolittle's treatment notes and are consistent with the State agency's medical consultant's opinions (Ex. 1A; 5A).

(R. at 30.)

Plaintiff's claim that the RFC does not account for Dr. Doolittle's opinions and is "inconsistent with the vast majority of the record" (ECF No.26 at 5) boldly misrepresents both the RFC's plain language and the nature of the medical evidence of record. Plaintiff focuses on the ALJ's alleged failure to conclude that she could not engage in any "over-the-shoulder the work" (ECF No. 26 at 4-5) or to address her limited ability for fine and gross movements. (ECF No. 15 at 12.) Neither of these issues warrants much discussion.

First, as noted above, Plaintiff did not raise the issue of the ALJ's failure to account for a limitation of no "over-the-shoulder work" until her reply brief.  (ECF No. 26.)  The minimal substantive argument in her initial brief appears limited to the issue of the ALJ's failure to account for fine and gross manipulative limitations in the RFC. (ECF No.15 at 12 "The record demonstrates [Plaintiff's] inability to use her right upper extremity, not just overhead as the ALJ claims, but in a far more restricted capacity than the ALJ's residual functional capacity allows. The evidence documents how [Plaintiff] cannot … use her right upper extremity …for fine and gross movement….")  This fact alone is a sufficient basis upon which to reject Plaintiff's claim as it relates to "over-the-shoulder work."  *See Nutt v. Comm'r of Soc.Sec.*, No. 20-11674, 2021 WL 4204348, at *7 (E.D. Mich. Jan. 26, 2021*), report and recommendation adopted sub nom. Nutt v. Comm'r of Soc. Sec. Admin.*, No. 20-CV-11674, 2021 WL 3828590 (E.D. Mich. Aug. 27, 2021) (declining to consider argument relating to dyslexia, citing, in part, plaintiff's raising it for first time in a reply brief); *see also Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.").  Not only this, but to the extent Plaintiff raises the issue of "no over-the-shoulder work" at all, the argument is conclusory at best.  This again is a sufficient basis upon which to reject Plaintiff's argument on this issue.  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible

19

argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

Moreover, without question, the RFC includes a limitation of "no overhead reaching with the dominant right upper extremity." Plaintiff even acknowledges as much. (ECF No. 15 at 12 "The record demonstrates [Plaintiff's] inability to use her right upper extremity, not just overhead as the ALJ claims ....') Not surprisingly then, Plaintiff fails to explain how this limitation fails to account for a restriction to "no over-the-shoulder work" or is in any way inconsistent with Dr. Doolittle's opinions, many of which expressly state "no overhead reach." (*See* R. at 579, 844, 859, 991, 1040.)

Additionally, and quite notably, Plaintiff's argument that the ALJ erred by failing to include fine and gross manipulative limitations in the RFC is equally lacking in meaningful development. Plaintiff simply fails to identify any evidence supporting the need for such limitations. Plaintiff merely sets forth a lengthy recitation of the medical evidence and offers, at most, her interpretation of this evidence as supporting such a limitation. (ECF No. 15 at 9-12.)

In short, Plaintiff fails to demonstrate that her shoulder impairment supports any different or more restrictive limitations than the ALJ assessed. As set forth above, the ALJ engaged in an extensive discussion of the medical evidence relating to Plaintiff's shoulder impairment. Plaintiff absolutely fails to identify any specific evidence the ALJ failed to consider in formulating the RFC sufficient to support additional limitations. Thus, although Plaintiff may have preferred a different RFC than the one determined by the ALJ, the ALJ thoroughly explained the bases for her RFC determination, and the ALJ's explanation enjoys substantial

support in the record.  *Dickinson v. Comm'r of Soc. Sec.*, No. 2:19-CV-3670, 2020 WL 4333296,

at *11 (S.D. Ohio July 28, 2020), *report and recommendation adopted*, No. 2:19-CV-3670, 2020

WL 5016823 (S.D. Ohio Aug. 25, 2020) (citing *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F.

App'x 637, 649 (6th Cir. 2013); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) ("The

substantial evidence standard presupposes that there is a 'zone of choice' within which the

Secretary may proceed without interference from the courts. If the Secretary's decision is

supported by substantial evidence, a reviewing court must affirm.")).  Under these

circumstances, the Court finds no merit to Plaintiff's statement of error challenging the ALJ's

RFC findings as they relate to her shoulder impairment.

## VII.    CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that

substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is

therefore, **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that

the Commissioner's decision be **AFFIRMED.**

## VIII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that

party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d

Recommendation, specifically designating this Report and Recommendation, and the part in

question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy.

Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816*,* 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date:    January 4, 2022                                  /s/ *Elizabeth A. Preston Deavers*
                                                        Elizabeth A. Preston Deavers
                                                        United States Magistrate Judge